IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-631

Filed 2 April 2025

Durham County, No. 20 CVD 1039

TAMMY EDWARDS ARRINGTON, Plaintiff,

v.

JAMES GREGORY ARRINGTON, Defendant.

Appeal by Plaintiff from order entered 11 August 2022 by Judge Dorothy Hairston Mitchell in Durham County District Court. Heard in the Court of Appeals 25 February 2025.

*Bourlon & Davis, P.A., by Camilla J. Davis, for plaintiff-appellant.*

*No brief filed for defendant-appellee.*

WOOD, Judge.

Tammy Edwards Arrington ("Plaintiff") appeals from the trial court's 11 August 2022 order of equitable distribution awarding an unequal distribution of the marital estate to Defendant. We hold the trial court did not abuse its discretion and affirm the trial court's order.

## I. Factual and Procedural Background

Plaintiff and Defendant married on 30 March 2013 and separated on 30 March 2020. There were no children born of the marriage. On 14 October 2020, Plaintiff filed a complaint for equitable distribution seeking, *inter alia*, the distribution of all

martial assets, property, income, resources, and other holdings. She specifically sought an unequal distribution.

Defendant did not file a responsive pleading to Plaintiff's complaint. On 16 December 2020, Plaintiff filed a motion for entry of default, seeking an entry of default for failure to respond. On 26 January 2021, Plaintiff filed an inventory affidavit, listing all assets and liabilities as of the date of separation, or acquired thereafter. A hearing on Plaintiff's motion was scheduled for 10 February 2021.

On 5 February 2021, a motion to schedule a judicial settlement conference was filed and subsequently calendared for 27 April 2021. That same day, a discovery conference order was entered, which outlined discovery deadlines and obligations on behalf of each party. Defendant was ordered to file an inventory affidavit by 26 February 2021. On 10 February 2021, the trial court entered default against Defendant for his failure to respond.

The judicial settlement conference was continued to 28 May 2021. The day prior to the conference, Defendant's attorney filed a motion to continue and a motion to withdraw. The trial court granted the motion to withdraw. The day of the conference the trial court entered an order reporting that the judicial settlement conference had not been held and found: "Defendant has failed to participate in any fashion in this case. He [has] not filed an answer, has not filed an [equitable distribution inventory affidavit], nor has he responded to discovery submitted to him by Plaintiff's attorney. [Alternative dispute resolution] is not appropriate."

A pre-trial conference was held on 3 June 2021 and Defendant was not present. An order was entered scheduling the final pre-trial conference and the hearing for equitable distribution. At the final pre-trial conference on 7 July 2021, the trial court continued the hearing to 3 September 2021, finding that Defendant needed additional time to consult with an attorney and "apprise himself of local rules." Defendant obtained new counsel on 23 July 2021.

On 3 September 2021, Defendant's counsel filed a motion to continue, as Defendant failed to bring the correct documents to the hearing. The motion was granted, and the final pre-trial hearing was continued again to 1 October 2021. Defendant filed an inventory affidavit that same day. The final pre-trial hearing was held as scheduled, and the trial court filed the resulting order.

On 1 November 2021, Plaintiff's counsel filed a motion to continue the hearing, alleging that Defendant's inventory affidavit and discovery responses failed to disclose certain assets. The trial court granted Plaintiff's motion and scheduled a hearing for 13 December 2021. Subsequently, the hearing was continued an additional time to 6 April 2022.

On 6 April 2022, the trial court held the equitable distribution hearing. Both parties were present at trial and presented evidence to the court. By order entered 11 August 2022, the trial court made findings based on the parties' stipulations and evidence, and classified Plaintiff's and Defendant's assets and liabilities, covering the period from before their marriage through the date of separation.

The trial court found that the "distributional factors set forth in N.C. [Gen. Stat.] Section 50-20(c) apply to the facts and circumstances of this case and that an equal distribution is not equitable." The trial court distributed Plaintiff's and Defendant's assets and liabilities as follows:

Plaintiff and Defendant were each entitled to their own 401(k) retirement accounts, with a balance of $6,650.32 and $13,449.75, respectively. Plaintiff's vehicle, a Jeep bought for her son, valued at $3,058.94, and the loan balance for the vehicle of $5,213.21, was distributed to Plaintiff. The debt labeled "wedding receipt" and secured through North Carolina State Employees Credit Union (NCSECU) totaled $14,998.92, and each party was ordered to pay half. Defendant was ordered to pay his share of the debt directly to Plaintiff over the course of seven years in eighty-four monthly payments of $131.85. The debt owed to Lendmark, which was used for the payment of household and marital bills, totaled $6,021.44. Although the Lendmark account was solely in Plaintiff's name, the debt was distributed to Defendant who was ordered to make the monthly payments on the loan directly to Plaintiff over a seven-year period in eighty-four monthly payments of $71.68. Debt acquired through One Main Financial was $7,053.38 at the date of separation and was distributed to Defendant. Student loan debt acquired during the marriage for Plaintiff's son, in the amount of $45,193.69, was stipulated to be martial debt, although the loan was solely in Plaintiff's name. Each party was ordered to pay half of the debt. Defendant was

ordered to pay his share of the debt directly to Plaintiff over the course of seven years in eighty-four monthly payments of $269.01.

Lastly, the trial court found that although Defendant had acquired the home prior to their marriage, in which the parties resided during their marriage, Defendant had gifted the home to the marriage one month prior to separation causing the home to become marital property. The only evidence about the value of the home presented to the court was a tax value of $166,516.00 and a payoff statement showing Defendant had paid $151,520.69 on 1 November 2021, after the parties' separation. The trial court found the home had a net value of $14,995.31 and distributed the marital home to Defendant. The trial court gave Plaintiff one hundred twenty days to vacate the former marital home.

Plaintiff owned a home acquired prior to the parties' marriage. During the marriage, the parties acquired a loan jointly using the home Plaintiff acquired prior to their marriage as collateral. The trial court determined Plaintiff had not gifted the home to the marriage and the home remained Plaintiff's separate property. The trial court ordered Plaintiff to refinance the loan to remove Defendant's name from the Deed of Trust within twelve months.

On 12 September 2022, Plaintiff filed a notice of appeal from the 11 August 2022 equitable distribution order.

## II.    Analysis

Plaintiff argues the trial court erred in its equitable distribution order by

distributing a greater share of the marital assets to Defendant, when Defendant did not have a pending claim for an unequal distribution and an entry of default had been entered against him. Plaintiff specifically contends the trial court erred by distributing to Defendant the martial home and the value of his 401(k) retirement account, an amount larger than fifty percent of the marital estate.

This Court reviews an equitable distribution order for a "clear abuse of discretion." *Petty v. Petty*, 199 N.C. App. 192, 197, 680 S.E.2d 894, 898 (2009) (citation omitted). "The division of property in an equitable distribution is a matter within the sound discretion of the trial court." *Id.* at 197, 680 S.E.2d 897-98 (citation omitted). Thus, "[t]he trial court's decision 'will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision.'" *Khajanchi v. Khajanchi*, 140 N.C. App. 552, 558, 537 S.E.2d 845, 849 (2000) (citation omitted). We uphold the trial court's findings of fact if the findings are supported by competent evidence in the record. *Britt v. Britt*, 168 N.C. App. 198, 204, 606 S.E.2d 910, 914 (2005).

The distribution of "marital and divisible property" is found under N.C. Gen. Stat. § 50-20. "In making an equitable distribution of marital assets, the trial court is required to undertake a three-step process: '(1) to determine which property is marital property, (2) to calculate the net value of the property, fair market value less encumbrances, and (3) to distribute the property in an equitable manner.' " *Fitzgerald v. Fitzgerald*, 161 N.C. App. 414, 418, 588 S.E.2d 517, 520-21 (2003)

(citation omitted).  Pursuant to N.C. Gen. Stat. § 50-20(c), the marital property must be divided equally, "unless the [trial] court determines that an equal division is not equitable." *Smith v. Smith*, 292 N.C. App. 443, 450, 899 S.E.2d 1, 6 (2024) (citations omitted).

If an equal division is not equitable, the trial court may elect to make an unequal distribution.  However, "[w]hen making an unequal distribution, the trial court must consider the factors enumerated in [N.C. Gen. Stat] § 50–20(c) and must make findings which indicate that it has done so." *Britt*, 168 N.C. App. at 204, 606 S.E.2d at 914.  The factors include, *inter alia*,

> (1) The income, property, and liabilities of each party at the time the division of property is to become effective.
>
> (2) Any obligation for support arising out of a prior marriage.
>
> (3) The duration of the marriage and the age and physical and mental health of both parties.
>
> (4) The need of a parent with custody of a child or children of the marriage to occupy or own the marital residence and to use or own its household effects.
>
> (5) The expectation of pension, retirement, or other deferred compensation rights that are not marital property.
>
> (6) Any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services, or lack thereof, as a spouse, parent, wage earner or homemaker.

(7) Any direct or indirect contribution made by one spouse to help educate or develop the career potential of the other spouse.

(8) Any direct contribution to an increase in value of separate property which occurs during the course of the marriage.

(9) The liquid or nonliquid character of all marital property and divisible property.

(10) The difficulty of evaluating any component asset or any interest in a business, corporation or profession, and the economic desirability of retaining such asset or interest, intact and free from any claim or interference by the other party.

(11) The tax consequences to each party, including those federal and State tax consequences that would have been incurred if the marital and divisible property had been sold or liquidated on the date of valuation. The trial court may, however, in its discretion, consider whether or when such tax consequences are reasonably likely to occur in determining the equitable value deemed appropriate for this factor.

(11a) Acts of either party to maintain, preserve, develop, or expand; or to waste, neglect, devalue or convert the marital property or divisible property, or both, during the period after separation of the parties and before the time of distribution.
. . .
(12) Any other factor which the court finds to be just and proper.

N.C. Gen. Stat. § 50-20(c)(1)-(12) (2023).

The trial court is not required to make "exhaustive findings of the evidentiary facts, but must include the ultimate facts considered." *Mosiello v. Mosiello*, 285 N.C.

App. 468, 471, 878 S.E.2d 171, 175 (cleaned up).  Stated differently, the trial court is given broad discretion to assess and weigh each distributive factor under N.C. Gen. Stat. § 50-20(c), and "there is no need to show exactly how the trial court arrived at its decision regarding unequal division, but an appellate court must be able to review and conclude the statutory factors were followed."  *Id.* at 471, 878 S.E.2d at 176 (cleaned up).  "A single distributional factor may support an unequal division." *Mugno v. Mugno*, 205 N.C. App. 273, 278, 695 S.E.2d 495, 499 (2010) (citation omitted).

As a preliminary matter, Plaintiff argues that the trial court erred by distributing a greater share of the marital assets to Defendant, when Defendant had an entry of default entered against him and therefore, had no pending claim for unequal distribution.  Plaintiff's argument is misplaced.

"The effect of an entry of default is that the defendant against whom entry of default is made is deemed to have admitted the allegations in plaintiff's complaint, and is prohibited from defending on the merits of the case." *Hartwell v. Mahan*, 153 N.C. App. 788, 791, 571 S.E.2d 252, 253-54 (2002) (citations omitted); *see also Luke v. Omega Consulting Grp., LC,* 194 N.C. App. 745, 751, 670 S.E.2d 604, 609 (2009) ("When default is entered due to a defendant's failure to answer, the substantive allegations contained in plaintiff's complaint are no longer in issue, and for the purposes of entry of default and default judgment, are deemed admitted." (citation omitted)).  Meaning, Defendant lost his right to assert counterclaims or defenses in

response to Plaintiff's complaint.

However, the entry of default does not "dispose of the underlying action" because "[i]n North Carolina, a plaintiff cannot obtain judgment by default in a divorce proceeding." *Adair v. Adair*, 62 N.C. App. 493, 498, 303 S.E.2d 190, 194 (1983). Further, even though the allegations in the plaintiff's complaint are deemed admitted, this "does not relieve plaintiff of the burden of appearing in court to prove the grounds alleged in the complaint." *Id.*

While the entry of default prohibited Defendant from asserting a response to Plaintiff's complaint, it did not alter the scope of the trial court's obligations during an equitable distribution proceeding. Notwithstanding an entry of default, the trial court was still required to determine which property was martial property; calculate the net value of the property; and distribute the property in an equitable manner. *Fitzgerald*, 161 N.C. App. at 418, 588 S.E.2d at 520-21. Consequently, contrary to Plaintiff's argument, the default judgment does not affect the trial court's distribution award.

Furthermore, the party seeking an unequal distribution must prove, by a preponderance of the evidence, that an equal distribution would be inequitable. *See Khajanchi*, 140 N.C. App. at 558, 537 S.E.2d at 849 ("[T]he party who desires an unequal division bears evidentiary burdens concerning the relevant statutory factors . . . [this] burden[] become[s] even more significant when we consider the fact that the trial court has *broad discretion* in . . . distributing the marital estate." (citation

omitted)).  Once the trial court concludes that an equal distribution is not equitable, it has the discretion to distribute the property accordingly, regardless of which party made the request.  *See Mugno,* 205 N.C. App. at 278, 695 S.E.2d at 499 ("Where the trial court decides that an unequal distribution is equitable, the court must exercise its discretion to decide how much weight to give each factor supporting an unequal distribution." (citation omitted)); *see also Montague v. Montague*, 238 N.C. App. 61, 70-71, 767 S.E.2d 71, 78 (2014) ("[T]he trial court is not required to show how it balanced the factors; the weight given to each factor is in the trial court's discretion; and there is no need to show exactly how the trial court arrived at its decision regarding unequal division." (citation omitted)).  Thus, Plaintiff's argument that the trial court erred by awarding a greater share of the marital assets to Defendant, despite Defendant having no pending claim for unequal distribution, is without merit.

Plaintiff moved for an unequal distribution and thus bore the burden of proving that an equal distribution would not be equitable.  However, once the trial determined that an equal distribution was not equitable, it had the discretion to allocate the marital assets as it saw fit, by weighing and balancing each statutory factor.  Therefore, the trial court was permitted to award a larger share to Defendant, rather than Plaintiff, even though the distribution ultimately granted was originally sought by Plaintiff.

Plaintiff next argues the trial court erred by distributing to Defendant the martial home and the value of the marital portion of his 401(k) retirement account.

However, Plaintiff failed to challenge any of the trial court's findings in the 11 August 2022 equitable distribution order. Thus, all of the findings are deemed binding on appeal and "supported by competent evidence." *In re A.M.L.,* 377 N.C. 1, 4, 855 S.E.2d 439, 443 (2021) (citation omitted); *see also Khajanchi,* 140 N.C. App. at 565, 537 S.E.2d at 853 ("Where no exceptions have been taken to the findings of fact, such findings are presumed to be correct and are binding on appeal." (citation omitted)).

Because the undisputed findings of facts are binding and supported, we hold the trial court complied with the requirements under N.C. Gen. Stat. § 50-20(c) as previously set forth. The trial court outlined the assets and liabilities of both Plaintiff and Defendant. While Plaintiff and Defendant equally shared the debt obligations from their "wedding receipts" and Plaintiff's son's student loans, Defendant was ordered to pay the balance of the marital Lendmark and One Main Financial debts. Further, each party was entitled to the value of the marital portion of their respective 401(k) accounts. *See* N.C. Gen. Stat. § 50-20(c)(1) (2023) ("The court shall consider . . . The income, property, and liabilities of each party at the time the division of property is to become effective.").

Additionally, the trial court found that of the marital property Defendant only wanted the marital home, did not request credit towards the post-date of separation payments made to the mortgage or debt, and had allowed Plaintiff to live in the home since the date of separation. The trial court acknowledged that while Defendant paid the mortgage and household bills on the marital home after separation, Plaintiff had

maintained the home while living there. *See* N.C. Gen. Stat. § 50-20(11)(a) ("Acts of either party to maintain, preserve, develop, or expand; or to waste, neglect, devalue or convert the marital property or divisible property, or both, during the period after separation of the parties and before the time of distribution.").

The trial court found that Defendant paid monthly payments to Plaintiff to pay towards the marital debt and that Defendant was a "generous financial provider." It further found that "there was no evidence the marriage had suffered financially" from Defendant's adulterous affairs, and that "[a]ll of the household bills and obligations were paid and as such there was no waste of marital assets." *See* N.C. Gen. Stat. § 50-20(c)(12) ("Any other factor which the court finds to be just and proper.").

As discussed supra, this Court cannot overrule the trial court's decision absent a determination that it is so arbitrary or capricious that it could not have been the result of a reasoned decision. *Khajanchi*, 140 N.C. App. at 558, 537 S.E.2d at 849. This Court "give[s] great discretion to the trial court's consideration of facts, as the trial court is the fact finder in equitable distribution cases and has the 'right to believe all, none, or some of a witness' testimony.'" *Smith*, 292 N.C. App. at 453, 899 S.E.2d at 8.

We conclude the trial court complied with the requirements set forth in N.C. Gen. Stat. § 50-20(c) and, in its discretion, determined an unequal distribution in favor of Defendant was equitable. After careful review of the record, we cannot conclude the trial court's determination is so arbitrary that it cannot be the result of

a reasoned decision. Thus, we affirm the trial court's 11 August 2022 order.

## III. Conclusion

The trial court did not err by distributing a greater share of the marital assets to Defendant, although Defendant had an entry of default entered against him and had not requested an unequal distribution. An entry of default does not dispose of the underlying equitable distribution action. Notwithstanding which party requests an unequal distribution, once the trial court makes a determination that an unequal distribution is equitable under N.C. Gen. Stat. § 50-20(c), the trial court has broad discretion in making the distribution, including to the non-moving party. The trial court complied with the requirements set forth in N.C. Gen. Stat. § 50-20(c) and, in its discretion, determined an unequal distribution in favor of Defendant was equitable. Accordingly, the trial court's equitable distribution order is affirmed.

AFFIRMED.

Judges TYSON and MURRY concur.